## Keely et al. *versus* Cassidy.

The principle which governs in all cases of substitution is one of equity merely, and is to be carried out in the exercise of an equitable discretion with a due regard to the legal and equitable rights of others. As subrogation is purely an equitable right it ought to be denied in all cases where its exercise would produce injustice.

February 27th 1880.     Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ.     Green, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1880, No. 152.

Replevin by Stephen A. Cassidy, assignee, against Robert N. Keely, landlord, and James J. Keating, bailiff.

In 1876, Patrick Brady made an assignment for the benefit of creditors to Cassidy, who, as assignee, gave sureties and proceeded to settle up Brady's estate. On the 19th of January 1877, the landlord of Brady's place of business distrained for rent which was due on the 1st of January 1877, when Cassidy, the assignee, sued out a writ of replevin. Pending this suit Brady was declared a bankrupt. Cassidy wasted the estate of Brady, and, as his assignee, was adjudged to pay $10,666, which amount his sureties paid into court. This sum was distributed to Brady's creditors, and the landlord was paid one year's rent ($2400) as a preferred creditor. At the trial Keely testified that the rent was paid. The sureties of Cassidy were then subrogated to the rights of the landlord, against the objection of plaintiff. A verdict for $2600 for rent was rendered, and the plaintiff moved for a new trial, which the court granted on the ground that the subrogation should not have been allowed. (See opinion of the court below.—Rep.)

Upon the new trial the defendants offered to prove that, October 2d 1876, Brady made a voluntary assignment for the benefit of his creditors to Cassidy, and thereunder Messrs. Horan and Thompson become his sureties. That subsequently one O'Neil became surety for Cassidy, assignee of Brady, upon the replevin bond in this case, and offered said bond in evidence *prout* the same. That the rent distrained for by Robert N. Keely in January 1877, then due and the subject of the present replevin, was $2400 due January 1st 1877, and there were sufficient goods of said assigned estate, upon the premises, liable to distress at that time to pay that rent. That in subsequent proceedings in the District Court of the United States for the Eastern District of Pennsylvania, Brady was adjudicated a bankrupt, and December 21st 1877, a decree was made against Cassidy, his assignee aforesaid, to pay into court $10,133.19 as the amount of said assigned estate for which he was liable, on failure to pay which sum he was placed in custody by the court, and

[Keely *v.* Cassidy.]

on demand upon Messrs. Horan and Thompson, his sureties, they furnished and paid into court that sum in Cassidy's name, and that court upon Mr. Keely's petition claiming said rent due ordered $2400 to be paid to him, and he received that sum out of said fund in court, being his whole claim on said distress. That this action is prosecuted by Messrs. Horan and Thompson in the name of Robert N. Keely for their use.

Objected to by plaintiff and objections sustained. The verdict was for plaintiff, and after judgment defendant took this writ and alleged that the court erred in excluding the above evidence.

On the motion for a new trial, heretofore referred to, the court, Finletter, J., after setting forth the facts as detailed above, proceeded:

" From this statement it will appear that the $10,666 paid by the sureties were a debt due by the assignee to Brady's estate ; that the rent was a debt due and paid by Brady's estate. It was contended that the rent was indirectly paid by the sureties ; that the replevin prevented the payment of the rent out of the property distrained upon, and thereby the sureties were injured by the act of the sureties upon the replevin bond ; that even if they have no right to be subrogated as against the sureties upon the replevin bond, they should be subrogated as against Cassidy. The general principle upon which subrogation rests is that, whenever any one pays a debt for which he is liable as surety or guarantor, it is equitable that he should be substituted in place of the creditor : Brandt on Suretyship 351. This principle is fully recognised in our decisions, not only as against the principal debtor, but also against a subsequent surety who, by his interposition, got time for the principal debtor to the prejudice of the prior surety : 13 Wright 29 ; McCormick's Adm. *v.* Erwin, 11 Casey 111 ; Pott *v.* Nathans, 1 W. & S. 155 ; Burns *v.* Huntingdon Bank, 1 P. & W. 394. In Mosier's Appeal, 6 P. F. Smith 81, THOMPSON, J., extends the doctrine as applicable to all cases where a payment has been made under a legitimate and fair effort to protect the ascertained interests of the party paying, and where intervening rights are not legally jeoparded or defeated. It is, however, well settled that a mere stranger or volunteer who pays a debt cannot thus be subrogated to the rights of a creditor : Brandt on Suretyship 351 ; Hoover *v.* Ehler, 2 P. F. Smith 524 ; Mosier's Appeal, 6 Id. 81 ; Wallace's Estate, 9 Id. 406 ; McGinnis's Appeal, 4 Harris 448 ; Irwin's Appeal, 11 Casey 294. It is hardly practicable to define the term " volunteer" in this regard. In Mosier's Appeal, *supra*, THOMPSON, J., indicates classes which may not be regarded as volunteers ; and from Wallace's Estate, *supra*, it may be inferred that a " volunteer" is one who, without legal or moral obligation, pays the debt of another. The principle which governs in all cases of substitution is one of equity merely, and is to be carried out in the exercise of

an equitable discretion with a due regard to the legal and equitable rights of others.   It is not to be used to overthrow the equity of another and thus work injustice: McGinnis's Appeal, 4 Harris 448; Lloyd *v.* Galbraith, 8 Casey 103; Zeigler *v.* Long, 2 Watts 206; Hancock *v.* Steen, 2 Miles 273; Wallace's Estate, 9 P. F. Smith 405.   It would seem from our authorities that a claim for subrogation to be successful must arise from the payment of a debt from legal or moral obligation, or interest, and must be equitable and work no injustice or hardship.   How does the claim of the sureties of the assignee stand this test?   They were in no way responsible for the rent, or interested in its payment; nor did they pay it.   They paid only Cassidy's individual debt.   To subrogate them would be to make Brady's estate, or the sureties for Brady's estate, pay for the wrongful acts of the assignee against that estate.   It is claimed, however, that in any event they should be subrogated against Cassidy. If he were individually and alone interested in the application, it might be allowed, as he does not object.   But he is not.   He is only interested as assignee of Brady's estate, and subrogation against him in this proceeding is subrogation against the estate.   Even if he were individually interested, he is not alone interested.   It is the avowed purpose of the application, and there could be no other, eventually to make the sureties upon the replevin bond responsible. If it be successful, these sureties would be subjected to a suit, and to the liability of paying the rent.   In that event they would have recourse against the estate.   The result would be that the creditors of the estate would be compelled to pay for Cassidy's appropriation of its funds for the relief of those who enabled him to plunder the estate.

"As subrogation is purely an equitable right, we ought to deny it in all cases where its exercises would produce such injustice. Under these views we have come to the conclusion that we erred in allowing the subrogation.   The rule for a new trial is made absolute."

*George L. Crawford*, for plaintiffs in error.—A security is entitled to subrogation against one who becomes answerable for the debt subsequently, as bail in error or for stay of execution, &c. : 2 White & Tudor's Leading Cases in Equity, 4th Amer. ed. 280; 1 Id. 156.   The principal in a bond being arrested gave bail, and judgment was had against the bail.   The sureties in the original bond, being sued on it, paid the money and filed a bill, whereon it was decreed, that the judgment against the bail should be assigned to them to reimburse what they paid with interest and costs : Parsons *v.* Braddock, 2 Vern. 608, affirmed by Sir William Grant in Wright *v.* Morely, 11 Vesey 222.

This is enforced on the principle that a surety paying a debt is entitled to all additional securities obtained by the creditor from

[Keely v. Cassidy.]

the principal debtor, and that the interposition of the second security may have been the means of involving the first in the ultimate liability to pay: Burns v. Huntingdon Bank, 1 P. & W. 395; Pott v. Nathans, 1 W. & S. 155; McCormick's Adm'r v. Irwin, 11 Casey 111; Lloyd v. Barr, 1 Jones 41; Ward v. Tyler, 2 P. F. Smith 398; Cornwell's Appeal, 7 W. & S. 308.

*William Gorman* and *Thomas J. Diehl*, for defendant in error.—The rule of subrogation is founded upon the fact that the surety paid the debt for the principal, and having so paid, is entitled to be subrogated as against him and his rights. Who is the principal here? Brady? Brady's estate owes the rent; he is the debtor; his estate has to pay, and did pay. Now, if the sureties are subrogated, it must be against Brady and his estate; they are sureties for Cassidy, assignee of Brady's estate, and if he is their principal, then they must occupy his place as claimants upon the fund. Can they do this? The landlord is paid out of the assigned estate. If they are entitled to subrogation in this one instance, they are on the same principle entitled to be subrogated to all the rights of the creditors of Brady, because they aver that they paid all the money into the United States court that afterwards went to pay the landlord and the other creditors of Brady's estate. The doctrine of subrogation, being one of mere equity and benevolence, will not be enforced at the expense of a legal right: Fink v. Mahaffy, 8 Watts 384. It will never be allowed unless the party applying for it has greater equity than the party opposing it: Neff v. Miller, 8 Barr 351; Goswiler's Estate, 3 P. & W. 203; Himes v. Keller, 3 W. & S. 401; In re McGill, 6 Barr 504; Lloyd et al. v. Galbraith et al., 8 Casey 103; McCormick's Administrators v. Irwin, 11 Id. 117.

The judgment of the Supreme Court was entered March 15th 1880,

PER CURIAM.—We affirm this judgment upon the opinion of the learned judge of the court below on the rule for a new trial.

Judgment affirmed.